IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Robbie Darryl Mullins and Tammy Mullins, *individually and as Co-Administrators for the Estate of their child,* Kathryn Grayce Mullins, *deceased* ) ) ) ) ) | C/A No. 3:21-cv-03165-SAL |
| Plaintiffs, ) ) | |
| v. ) ) | **OPINION & ORDER** |
| Dominion Energy South Carolina Inc., *a South Carolina domestic corporation* ) ) ) | |
| Defendant. ) ) | |

This matter is before the court on Plaintiffs' Motion to Remand (the "Motion"). [ECF No. 7.] For the reasons set forth below, the court grants the Motion and remands the matter to the Court of Common Pleas for Richland County, South Carolina.

**BACKGROUND AND PROCEDURAL HISTORY**

On March 4, 2021, Plaintiffs Robbie Darryl Mullins and Tammy Mullins ("Plaintiffs"), individually and as co-administrators of the estate of their daughter, Kathryn Grace Mullins ("Mullins"), filed the above-captioned action against Defendant Dominion Energy South Carolina Inc. ("Defendant") in the Court of Common Pleas for Richland County South Carolina. [ECF No. 1-1, Compl.] Defendant is a South Carolina corporation and the operator of the Saluda Hydroelectric Project 516, which includes the body of water known as Lake Murray. *Id.*; Answer ¶ 4.

Plaintiffs allege that on or about July 18, 2020, Mullins was a passenger in a pontoon boat returning from the open waters of Lake Murray. Compl. ¶¶ 15, 16. While the operator of the boat attempted to dock, the boat bumped into a tree at or near the edge of Defendant-owned shoreline,

1

resulting in a dead portion of the tree dislodging and striking Mullins. *Id.* ¶¶ 18, 22. Plaintiffs assert that Defendant's breach of care concerning the tree caused the severe injury and wrongful death of Mullins. Plaintiffs assert four causes of action: (1) premises liability—negligence, gross negligence, and recklessness; (2) survival; (3) wrongful death; and (4) punitive damages.

On September 9, 2021, Defendant removed the case to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, exclusive jurisdiction, 16 U.S.C. § 825p, diversity jurisdiction, 28 U.S.C.§ 1332, and admiralty jurisdiction, 28 U.S.C. § 1333. [ECF No. 1.] On October 29, 2021, Plaintiffs filed their Motion. [ECF No. 7.] Defendant filed a response, and Plaintiffs replied. [ECF Nos. 10, 11.] The court held a hearing on May 6, 2022. The Motion has therefore been fully briefed, heard, and is ripe for resolution by the court.

## STANDARD

Under 28 U.S.C. § 1441(a), a suit filed in state court may be removed to federal court if the federal court has original subject matter jurisdiction. The party invoking subject matter jurisdiction bears the burden of persuasion. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted) ("Federal courts are courts of limited jurisdiction . . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."). Thus, removal under section 1441 requires the removing party to demonstrate that subject matter jurisdiction lies in the federal courts. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002).

If the district court determines that it lacks subject matter jurisdiction, remand is proper. 28 U.S.C. § 1447(c). Further, "[b]ecause removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic*

*Chems. Co.*, Inc., 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id.*

## DISCUSSION

Defendant asserts that the court has jurisdiction over this action through federal question jurisdiction and exclusive jurisdiction, 28 U.S.C. § 1331 and 16 U.S.C.A. § 825p; admiralty jurisdiction, 28 U.S.C.A. § 1333; and diversity jurisdiction, 28 U.S.C. § 1332. The court considers each jurisdictional argument in turn, before turning to Plaintiffs' request for attorney's fees and costs.

### I. Federal-Question Jurisdiction: Section 1331

Federal courts may hear cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This is known as federal-question jurisdiction. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Pursuant to the well-pleaded complaint rule, the plaintiff is the "master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392. The defendant is "not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000) (citing *Caterpillar*, 482 U.S. at 399)). Nor can a defense grounded in federal law provide the basis for removal—"even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

Typically, when a case is removed under federal-question jurisdiction, federal law creates the cause of action asserted in the complaint. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). But even when federal law does not create the cause of action, federal-question jurisdiction may exist if the state claims raise "significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The four-part test to determine whether state claims raise "significant federal issues" takes its name from the Supreme Court case, *Grable*. The test states that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313–14). Federal jurisdiction is only proper if all four requirements are met.

Plaintiffs' complaint indisputably asserts only state law claims for relief. Federal law, therefore, does not create Plaintiffs' asserted causes of action, and the court looks to *Grable* to determine whether Plaintiffs' state causes of action raise "significant federal issues."

### A. Plaintiffs' causes of action do not necessarily raise federal issues.

The court need not look further than the first *Grable* requirement that a federal issue is "necessarily raised" by Plaintiffs' well-pleaded state causes of action. Defendant fails to meet this requirement because there are legal theories involving only state law that can adequately resolve Plaintiffs' claims. *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816–17 (4th Cir. 2004) ("[A] given claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue."); *Mulchaey*, 29 F.3d at 153 ("[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist.").

Defendant argues that Plaintiffs cannot bring their premises liability cause of action without raising a federal issue because Defendant has "duties and responsibilities with respect to the Saluda Dam and the waters of Lake Murray, *including duties and responsibilities related to shoreline management*[] and recreational uses of the waters" governed by the Federal Power Act ("FPA"), Federal Energy Regulatory Commission ("FERC") Rules and Regulations, and the terms and conditions of its FERC Project 516 license.  [ECF No. 10 at 5.]   Defendant maintains its duties are set out in its 1984 FERC license, which states that "all trees along the periphery of the project reservoirs which may die during operations of the project shall be removed."  [ECF No. 1-3 at 26.]  But even if this license imposes duties on Defendant concerning the ongoing maintenance and management of Lake Murray shoreline trees, Plaintiffs' claim does not *require* interpretation of Defendant's FERC license or federal law because South Carolina sets forth its own duties for landowners to keep their premises safe.  Under South Carolina law, "[t]he nature and scope of duty in a premises liability action, if any, is determined based upon the status or classification of the person injured at the time of his or her injury."  *LeFont v. City of Myrtle Beach*, 430 S.C. 534, 541, 846 S.E.2d 355, 358 (Ct. App. 2020).  Defendant has not identified any inconsistency between its duties arising under South Carolina law and those arising from its status as a FERC licensee.  Plaintiffs can thus proceed under a purely state law theory by establishing Mullins' status at the time of the incident and Defendant's duty as the alleged landowner, as defined by South Carolina law.  *See* [ECF No. 7 at 6.].

The Fourth Circuit remanded a claim for similar reasons in *Pressl v. Appalachian Power Company*, 842 F.3d 299 (4th Cir. 2016).  In *Pressl*, landowners sought to construct a dock on property that was subject to a flowage easement owned by a FERC licensee.  The Pressls filed suit against APCO in state court, seeking a declaratory judgment that the restrictions and demands

5

APCO required for construction of the dock violated the easement terms. *See id.* at 301–02. APCO removed the case, asserting that the federal court had jurisdiction because the dock would be built "within the project boundary for APCO's hydroelectric project, which APCO operate[d] under a license issued by [FERC]." *Id.* at 302. The Fourth Circuit acknowledged that FERC imposes certain duties on APCO for managing development and construction within the project boundary—including managing the construction of docks. *Id.* at 303. However, the court found that the landowners' claims did not *necessarily* raise a federal issue because state law dictated the interpretation of the language conveying the easement, and thus the court "did not need to analyze the meaning of APCO's license to determine the reasonable limits of the easement." *Id.*

Defendant argues that interpretation of its Shoreline Management Plan ("SMP") is essential to understanding any duties owed and Plaintiffs will have to establish that Defendant "failed to comply with applicable FERC rules and regulations and violated its duties and responsibilities under the Project 516 license" to prove their claim. [ECF No. 10 at 8–9.] The court disagrees. While FERC may impose certain duties on Defendant for managing the shoreline of Lake Murray, Plaintiffs have demonstrated that they can establish their premises liability claim—not based on Defendant's duties under the SMP or the terms of its FERC license—but based only on Defendant's duties as a property owner under South Carolina law. Defendant fails to demonstrate that the terms of its FERC license or SMP are a necessary part of this inquiry or that federal law must be applied to the facts of this case. As in *Pressl*, the Plaintiffs' claim does not *require* the court to look beyond state law, and the court lacks "arising under" jurisdiction.

The court is also unpersuaded by Defendant's reliance on *Funderburk v. S.C. Elec. & Gas Co.*, 179 F.Supp.3d 569, 578 (D.S.C. 2016), a clearly distinguishable case. *Funderburk* involves claims by South Carolina homeowners against Defendant (then known as SCE&G) for property damage

6

resulting from the opening of the floodgates of the Lake Murray Dam. The *Funderburk* court found that the plaintiff's claim necessarily raised federal questions because FERC set the appropriate duty of care for Defendant, as a dam operator. The court emphasized that "the only currently ascertainable source of a duty of care for Plaintiffs' negligence claim against SCE&G for its maintenance and operation of the Lake Murray Dam stem[med] from its status as a licensed FERC project." *Id.* at 578–69. Unlike the negligence claims in *Funderbuck*, Plaintiffs' claims do not invoke Defendant's duty of care as the operator of the Lake Murray Dam/Hydroelectric Project 516. The claims are limited to Defendant's duty of care as the owner of the lakeshore property on which the allegedly dead and hazardous tree was located. This court thus need not look to Defendant's status as a FERC licensee for the source of a duty of care because there is an ascertainable duty of care for Plaintiffs' premises liability claim stemming from its status as a South Carolina landowner.

Because Defendant has failed to demonstrate that resolution of Plaintiffs' causes of action will *require* the resolution of a federal issue, it has failed to satisfy the first *Grable* element.

**B. Defendant fails to establish jurisdiction under the remaining *Grable* requirements.**

Because Defendant's argument fails the first step of *Grable*, this court lacks jurisdiction based on "significant federal issues." Although the court's inquiry could end there, it is worth noting that Defendant also fails to establish the other three *Grable* requirements necessary to invoke federal jurisdiction—(1) an actually disputed federal issue, (2) that is substantial, and (3) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Gunn*, 1333 S.Ct. at 1065.

To start, Plaintiffs have not disputed Defendant's status as a federal licensee nor the validity of its SMP. Likewise, Plaintiffs do not challenge Defendant's compliance with the FPA or FERC

rules and regulations. Defendant, thus, has not demonstrated any "actually disputed" issue raised in Plaintiffs' complaint. *See Pressl*, 842 F.3d at 305 (finding no "actually disputed issue" where there was no dispute over the validity of APCO's license or obligations to FERC and Plaintiffs only challenged whether the flowage easement by its terms prevented dock constructions); *Williams v. S.C. Elec. & Gas Co.*, No. 3:15-cv-04899, 2016 WL 1578949, at *9 (D.S.C. Apr. 20, 2016) (finding SCE&G's conclusory assertion that plaintiff's inverse condemnation and trespass claims involved and challenged its compliance with the terms of its FERC license, the FPA, and FERC rules and regulations did not satisfy the "actually disputed" requirement); *Louisiana v. Abbott Labs.*, C/A No. 3:13-cv-00681, 2014 WL 4924329, at *5 (M.D. La. Sept. 30, 2014) ("Defendants conclusory assertions and speculation are insufficient to meet their burden of demonstrating their claims necessarily raise . . . actually disputed issues of federal law.").

Regarding the substantiality of the federal issues, "it is not enough that the federal issue be significant to the particular parties in the immediate suit"—it must be important to the federal system as a whole. *Gunn v. Minton*, 568 U.S. 251,260, 133 S.Ct. 1059 (2013). In *Funderburk*, SCE&G was able to identify a substantial federal question by pointing to its FERC license, which expressly provided that SCE&G "shall release water . . . as the [FERC] may prescribe." 179 F. Supp. 3d at 576. In the instant case, Defendant points to its general duties as the operator of a hydroelectric project—which includes a shoreline management plan—but fails to identify any specific language imposing a duty to manage dead or decaying shoreline trees. The court finds that any federal interest in interpreting Defendant's duty of care regarding such trees is not substantial and the issue is capable of being resolved by a state court without disrupting the congressionally approved federal-state balance. While there is a federal interest in ensuring the

effective operation of hydroelectric projects, such an interest is not undermined by resolution of this premises liability dispute in state court. *See Pressl*, 842 F.3d at 305 (4th Cir. 2016).

For all the foregoing reasons, the court concludes that 28 U.S.C. § 1331 provides no basis for federal jurisdiction over this case.

## II. Exclusive Jurisdiction: 16 U.S.C. § 825p

Defendant also contends that this court has jurisdiction pursuant to the Federal Power Act (the "FPA"). ECF No. 1 ¶ 18. The FPA grants federal district courts exclusive jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the FPA] or any rule, regulation, or order thereunder." 16 U.S.C. § 825p. The jurisdictional test under 16 U.S.C. § 825 is the same test as the "arising under" test under 28 U.S.C. § 1331. *Pressl*, 842 F.3d at 306. Consequently, because Plaintiffs' premises liability claim does not involve substantial issues arising under the FPA or seek to enforce a duty created by the FPA, this court lacks exclusive jurisdiction under 16 U.S.C § 825p. *See Pressl*, 842 F.3d at 306 ("Because we have held that this case does not 'arise under' federal law for purposes of federal question jurisdiction under 28 U.S.C. § 1331, we must also hold that there is no basis for exclusive jurisdiction under 16 U.S.C. § 825p.").

## III. Admiralty Jurisdiction: Section 1333

Next, Defendant appeals to this court's admiralty jurisdiction in an attempt to remain in federal court. 28 U.S.C. § 1333(1) confers original jurisdiction upon district courts, exclusive of state courts, over civil cases of admiralty or maritime jurisdiction. "A party seeking to invoke federal admiralty jurisdiction over a tort claim pursuant to 28 U.S.C.A. § 1333(1) must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes*

9

*Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).  Courts apply a two-part "locality plus" test to determine whether the conditions have been satisfied.

### 1. Locality of the Tort

To determine whether the location requirement is satisfied, the court considers "whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534.  Though Plaintiffs concede in their briefing that "Lake Murray is a navigable water pursuant to the holding in *Thompson v. S.C. Elec. & Gas Co.*, 122 F.Supp 313, 333 (E.D.S.C. 1994)," ECF No. 7 at 22, they presented argument at the remand hearing that other precedent in this Circuit holds otherwise.  Specifically, Plaintiffs cited *Alford v. Appalachian Power Co.*, 951 F.2d 30 (4th Cir. 1991) and *Flath v. Bombardier, Inc.*, 217 F.3d 838 (2000) (unpublished).

*Alford* defined navigable water, for purposes of admiralty jurisdiction, "as a body of water which, in its present configuration, constitutes a highway of commerce, alone or together with another body of water, between the states or with foreign countries over which commerce in its current mode is capable of being conducted."  217 F.3d at 32.  The court went on to find that "a dammed, lockless lake lying wholly within the State of Virginia" was not a navigable body of water for purposes of admiralty jurisdiction because its present configuration did not allow commercial shipping between states or with foreign countries.  *Id.* at 34.  Likewise, in *Flath*, the district court held that Lake Murray is not a navigable waterway because it "is a dammed, lockless lake that is wholly contained within the state and incapable in its current configuration of supporting commercial shipping."  217 F.3d. 838.  Relying on *Alford*, the Fourth Circuit in *Flath* affirmed that the district court appropriately took judicial notice with respect to the present

10

configuration of Lake Murray and, once it took such notice, "properly concluded that the lake is not a navigable waterway for purposes of establishing federal admiralty jurisdiction." *Id.*

Although an unpublished opinion, the court finds *Flath* highly persuasive in this case. This court, as in *Flath*, takes judicial notice of the fact that Lake Murray is a dammed, lockless lake that is wholly contained within the state of South Carolina and incapable, in its current configuration, of supporting commercial shipping. Furthermore, *Flath* is in lockstep with *Alford*—a published Fourth Circuit decision—and its reasoning. Defendant's argument that this court has admiralty jurisdiction because its FERC license refers to the lake as navigable does not hold water under *Alford*'s definition of "navigable water." *See Alford,* 951 F.2d at 32. Nor is the fact that Lake Murray supports some business activity sufficient to invoke this court's admiralty jurisdiction. *See id.* at 33-34. Therefore, under *Alford*, the court finds Lake Murray is not "navigable water" for purposes of invoking this court's admiralty jurisdiction.

### 2. Connection to Maritime Activity

Assuming, for purposes of this analysis, that Lake Murray *is* a navigable body of water, and the locality test is met, Defendant's argument fails at the second step of the inquiry—whether the alleged wrong bears a significant connection to traditional maritime activity. The Supreme Court has set forth a two-prong nexus test for determining whether there is a sufficient connection maritime activity. First, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Sisson v. Ruby*, 497 U.S. 358, 363 (1990). Second, "the party seeking to invoke maritime jurisdiction must show a substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Id.* at 364. Both prongs of the nexus test must be satisfied to invoke this court's admiralty jurisdiction.

The first prong does not focus on the specific facts of the incident at hand, "but on whether the 'general features' of the incident were 'likely to disrupt commercial activity.'" *Grubart*, 513 U.S. at 538. The general features of this case can be described as a passenger injury caused by shoreline vegetation after a vessel struck the vegetation. The question before the court is "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *See id.* at 539. The court finds that the incident does not pose such a risk.

The general features of this incident are unlike those where courts have found incidents are potentially disruptive to maritime commerce. *See e.g. Sisson v. Ruby*, 497 U.S. 358 (1990) (finding a fire on a boat docked at a marina on navigable water "could have 'spread to nearby commercial vessels or ma[d]e the marina inaccessible to such vessels'" and therefore had a potentially disruptive impact on maritime commerce); *Grubart*, 513 U.S. at 539 (finding a vessel damaging an underwater structure beneath the riverbed "could lead to a disruption in the water course itself" and "lead to restrictions on the navigational use of the waterway during required repairs").

Because the general features of this case involve a pleasure boat striking vegetation near a residential shoreline, the risk of dead or decaying trees causing injury to vessels appears to be limited to private, pleasure boats, rather than commercial vessels. Additionally, because this case involves only a single tree near a residential shoreline, it does not appear to have the potential to disrupt or restrict the navigational use of Lake Murray. While Defendant contends that vessels striking trees on navigable waters is potentially disruptive to maritime commerce, Defendant has not shown that *shoreline* trees are present in most major thoroughfares and pose a risk to vessels navigating those waterways. *See* ECF No. 1 ¶ 49 (citing *Complaint of Bird*, 794 F. Supp. 575, 580 (D.S.C. 1992) ("The court . . . must remove the scene of the accident to the busiest of maritime thoroughfares and then ask whether [the general features of the case] on that major thoroughfare

has the potential of disrupting maritime activity.")).  For the foregoing reasons, the court does not find that the general features of this case are potentially disruptive of commercial maritime activity.

Briefly, the court explains why the second prong under the nexus test also fails.  This prong "looks to whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  *Grubart*, 513 U.S. at 539.  Defendant argues that its care and maintenance for the trees and shoreline of Lake Murray "ensures the navigability of Lake Murray" and thus bears a substantial relationship to the traditional maritime activity of navigation.  [ECF No. 1 ¶ 53.]  Even if Defendant's shoreline management responsibilities are tangentially related to ensuring the navigability of the lake, Plaintiffs' complaint does not allege any navigational error or issue.  *See Respess v. United States,* 586 F. Supp. 861, 865 (E.D. La. 1984) (finding a sufficient maritime nexus because "the accident was allegedly caused by a navigational obstruction, with which admiralty law has been traditionally concerned").  The court is limited to considering the four corners of Plaintiffs' complaint and finds that Defendant's allegedly negligent maintenance of shoreline trees does not bear a substantial relationship to the navigability of Lake Murray.

In sum, because the location and connection tests are not satisfied, this Court lacks original jurisdiction over this action under 28 U.S.C.A. § 1333.

### IV. Diversity Jurisdiction: Section 1332

Finally, Defendant argues in its notice of removal that this court has original diversity jurisdiction under 28 U.S.C. 1332(a).  [ECF No. 1. ¶¶ 21–39.]  Defendant, however, indicated at the motion hearing that it withdrew its diversity argument.  Indeed, diversity is not a proper basis for the court's jurisdiction in this case.  Pursuant to 28 U.S.C. § 1441(b)(2), a civil action that is removable solely pursuant to 28 U.S.C. § 1332(a) diversity jurisdiction cannot be removed if any

party served as a defendant is a citizen of the state where the action is brought. This provision prevents removal when the defendant is "at home" in the relevant state where the action accrues—in this case, South Carolina. Because Defendant is a corporation that is "at home" in South Carolina, and this civil action is removable solely pursuant to diversity jurisdiction, removal is improper under 8 U.S.C. § 1441(b)(2).

## V. Plaintiffs' Request for Attorney's Fees

In connection with Plaintiffs' remand motion, they have requested attorney's fees under 28 U.S.C. § 1447(c). The Supreme Court has proscribed the standard for awarding attorney's fees under § 1447. "[A]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). While the court finds that it lacks jurisdiction over this case, it also finds Defendant had an objectively reasonable basis for seeking removal. The court thus denies Plaintiffs' request for attorney's fees.

## CONCLUSION

This court is one of limited jurisdiction, and this case is one that does not fall within the parameters of that limited jurisdiction. In accordance with the foregoing, Plaintiffs' Motion to Remand, ECF No. 7, is **GRANTED**. The above-captioned matter is **REMANDED** to the Court of Common Pleas for Richland County, South Carolina.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

May 12, 2022
Florence, South Carolina